UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW S. S.,

                 Plaintiff,

v.                                                                6:21-CV-0014
                                                                  (TJM/ML)
COMMISSIONER OF SOCIAL SECURITY,


                 Defendant.
_____

APPEARANCES:                                                      OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ                                     PETER W. ANTONOWICZ, ESQ.
   Counsel for Plaintiff
148 West Dominick Street
Rome, New York 13440

SOCIAL SECURITY ADMINISTRATION                                   LOUIS JOHN GEORGE, ESQ.
   Counsel for Defendant                                         Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

Plaintiff Matthew S. S. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying his application for Social Security Disability

Insurance ("SSDI") benefits. (Dkt. No. 1.) This case has proceeded in accordance with General

Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of

Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 13) and Defendant's motion for judgment on the pleadings (Dkt. No. 14).

For the reasons set forth below, I recommend that Defendant's motion for judgment on the pleadings (Dkt. No. 14) be granted, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be denied, the Commissioner's decision denying Plaintiff SSDI benefits be affirmed, and Plaintiff's Complaint (Dkt. No. 1) be dismissed.

## I.    PROCEDURAL HISTORY

On March 6, 2018, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning January 10, 2018, due to PTSD, depression, anxiety, diabetes, hypertension, high cholesterol, and gastroesophageal reflux disorder ("GERD"). (Administrative transcript ("T.") 300-303, 380.) His application was denied initially on May 16, 2018. (T. 137-142.) Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held before ALJ Elizabeth Koennecke on May 15, 2019. (T. 44-71.) With Plaintiff's consent and participation, the ALJ held a supplemental telephonic hearing on November 20, 2019. (T.72-83.) On December 3, 2019, ALJ Koennecke issued an unfavorable decision. (T.113-132.) Plaintiff requested a review of the unfavorable decision by the Appeals Council, which vacated the hearing decision and remanded the case for further proceedings. (T. 133-136.) On September 8, 2020, ALJ Koennecke held another hearing, during which Plaintiff and vocational expert ("VE") Lynn Paulson testified. (T. 84-98.) On October 8, 2020, the ALJ issued a second unfavorable decision. (T. 12-33.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on December 2, 2020. (T. 1-6.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

> ### B.      Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or combination
> of impairments; (3) whether the impairment meets or equals the severity

---

[1]      The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and
Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.    FACTS

As of the date of the ALJ's second unfavorable decision, Plaintiff was 48 years old. (T. 27, 48, 99.) He has an associate's degree in nursing with at least three years of college completed. (T. 27, 48-49.) His prior employment includes positions as a nurse and nurse supervisor. (T. 401-408.) He alleges that he cannot return to work due to his PTSD. (T. 61.)

Plaintiff reported that he suffers from PTSD related to his time in combat during his military service from 1990 to 1993. (T. 61.) Plaintiff denied limitations associated with any other impairment or conditions, and the ALJ limited inquiry to the impairments alleged in the initial application. (T. 18.) Plaintiff testified that he has been treating with Dr. Reddy, who prescribes his medication, for approximately the last ten years. (T. 67.) Plaintiff testified that he has undergone therapy in the past but has not engaged in therapy in "recent years." (T. 68.)

The record includes Plaintiff's treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status through June 30, 2023. (T. 17.) After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the alleged onset date of January 10, 2018, the ALJ found that Plaintiff's mental diagnoses

that were variously characterized as anxiety, depression, and/or PTSD were severe impairments. (T. 18-19.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 19-21.) At step four, the ALJ found that Plaintiff could perform less than the full range of work at all exertional levels. (T. 21-26.) More specifically, the ALJ found that, through the date last insured, Plaintiff could:

> perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and handle simple, repetitive work-related stress, in that he can make occasional decisions, directly related to the performance of simple tasks, in a position with consistent job duties, which does not require the claimant to supervise or manage the work of others. The claimant should avoid work requiring more complex interaction or joint effort to achieve work goals. He should have no contact with the general public.

(T. 21.) In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 21.) The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. (*Id*.) The ALJ also considered Plaintiff's subjective complaints regarding symptoms and functional limitations raised during the hearing and in the overall administrative record. (T. 21-26.)

At step four, the ALJ relied on the VE testimony to determine that Plaintiff is unable to perform his past relevant work as a nurse and psychiatric technician. (T. 26-27.) However,

6

based upon the RFC and testimony of the VE, the ALJ determined that there were jobs existing

in significant numbers in the national economy that Plaintiff could perform.  (T. 27-28.)

Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date of January

10, 2018, through the date of her decision.  (T. 28.)

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision

is not supported by substantial evidence:

1.    The ALJ erred by not finding that Plaintiff's mental condition met or medically equaled Listing 12.15.  (Dkt. No. 13 at 13-20.)

2.    The ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the medical opinion evidence. (Dkt. No. 13 at 20-25.)

Defendant contends that the ALJ's decision is supported by substantial evidence.  (Dkt.

No. 14 at 5-26.)  For the reasons set forth below, I recommend that Defendant's motion for

judgment on the pleadings be granted and the Commissioner's decision be affirmed.

## VI.    LISTING 12.15

### A.    Legal Standards

"The Listing of Impairments describes, for each of the major body systems, impairments

which are considered severe enough to prevent a person from doing any gainful activity." 20

C.F.R. § 416.925(a).  If a claimant's impairment or combination of impairments meets or equals

a listed impairment, the evaluation process is concluded and the claimant is considered disabled

without considering the claimant's age, education, or work experience. 20 C.F.R. §

416.920(a)(4)(iii).

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a

listed impairment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish

that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments. *Gabriel C. v. Comm'r of Soc. Sec.*, 18-CV-0671, 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) (Baxter, M.J.) (citing *inter alia Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Ramirez Morales v. Berryhill*, 17-CV-06836, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation and internal quotations omitted)). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. *Debra E. v. Comm'r of Soc. Sec.*, 18-CV-0513, 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (Mordue, J.) (quoting *Sullivan*, 493 U.S. at 530). In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

An ALJ is not required, in every instance, to provide an express explanation for his conclusion that a claimant's impairments fail to meet or equal the requirements of a Listing. *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). "[W]here the evidence on the issue of whether a claimant meets or equals the listing requirements is equipoise and 'credibility determinations and inference drawing is required of the ALJ' to form his conclusion at step 3, the ALJ must explain his reasoning." *Ryan v. Astrue*, 5 F. Supp. 3d at 507-08 (quoting *Berry*, 675 F.2d at 469). Although "an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent [the court] from upholding them so long as [the court] is 'able to look to other portions of the

ALJ's decision and to clearly credible evidence in finding that his determination was supported

by substantial evidence.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010)

(quoting *Berry*, 675 F.2d at 469).

**B.    Application**

Listing 12.15 trauma- and stressor-related disorders (*see* 12.00B11), requires a claimant

to satisfy the requirements of paragraphs A and B, or A and C:

A.    Medical documentation of all of the following:

      1.    Exposure to actual or threatened death, serious injury, or violence;

      2.    Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

      3.    Avoidance of external reminders of the event;

      4.    Disturbance in mood and behavior; and

      5.    Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

      AND

B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F)[2]:

      1.    Understand, remember, or apply information (see 12.00E1).

      2.    Interact with others (see 12.00E2).

      3.    Concentrate, persist, or maintain pace (see 12.00E3).

      4.    Adapt or manage oneself (see 12.00E4).

      OR

C.    Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

---

[2]    Such rating is based on a five-point scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4).

1.      Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2.      Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.15.

Plaintiff contends that he meets or equals Listing 12.15 because his mental impairments—as reflected in the record by his treating sources—establish at least an extreme limitation of one or marked limitation of two areas of mental function from paragraph B. (Dkt. No. 13 at 13-17.) In addition and in the alternative, Plaintiff contends that the record evidence supports that he meets the criteria set forth in paragraph C. (*Id*. at 17-20.) Defendant argues that the ALJ deployed the "special technique" and supportably determined that Plaintiff had no more than moderate limitation in any area of functioning and thus, did not meet the paragraph B criteria. (Dkt. No. 14 at 7-13.) Moreover, Defendant argues that the ALJ supportably explained that Plaintiff's mental impairments did not meet or equal the requirements of paragraph C. (*Id*. 13-14.)

### 1.      Paragraph B

As noted above, the burden is on Plaintiff to show that all of the requirements are met before he can satisfy a Listing. *Otts v. Comm'r of Soc. Sec*., 249 F. App'x 887, 889 (2d Cir. 2007).

Here, the ALJ determined that Plaintiff had the following levels of limitations with regards to the paragraph B criterion: "no significant limitations" in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. (T. 20 [emphasis added].) In making these determinations, the ALJ noted that despite

10

Plaintiff's self-reported problems concentrating, completing tasks, being in a crowd, with hypervigilance, with panic attacks, with flashbacks, and with intrusive thoughts, he had also reported that he is able to bathe, dress, and groom himself; socially engage with friends; attend events with a group of friends; cook and prepare food; do general cleaning and laundry; go shopping; manage money; and drive a car and utilize public transportation, if needed.  (*Id.*) Further, the ALJ noted Dr. Grassl's exam of Plaintiff, which found him to be irritable and his manner of relating as "fair," but also demonstrated that his motor behavior was normal, his eye contact was appropriate, and his speech was fluent and clear, with adequate receptive and expressive language.  (*Id.*)  Dr. Grassl concluded that Plaintiff had no limitations for understanding, remembering, or applying information, marked limitations for interacting with others, no limitations for concentrating or performing a task at a consistent pace, and no limitations for sustaining an ordinary routine, regularly attending work, maintaining personal hygiene and appropriate attire, and being aware of and taking appropriate precautions around hazards.  (T. 700.)  The ALJ also identified progress notes from Plaintiff's treating providers, which identified no significant limitations in Plaintiff's cognitive abilities[3] and described Plaintiff as well groomed, cooperative, and making good eye contact.  (T. 20.)

Relying on these findings, the ALJ noted that Plaintiff's mental impairments did not cause the extreme limitation of one, or marked limitation of two, of the paragraph B criteria.  (T. 20.)  I find that the ALJ's determination that Plaintiff failed to meet the criteria under paragraph B is supported by substantial evidence.  In her decision, the ALJ cited to the records of multiple medical professionals who examined Plaintiff, including a state agency medical consultant, whose opinion constitutes expert opinion evidence which can be relied upon, where supported by

---

[3]      (T. 992, 1079.)

medical evidence in the record and not inconsistent with other substantial evidence, as is the case here. *See* 20 C.F.R. § 404.1513a(b)(1); SSR 96-6p; *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). As a result, I recommend that the Court deny Plaintiff's motion for judgment on the pleadings on this ground because Plaintiff has failed to show that the ALJ erred in concluding that he did not meet or equal the impairment criteria for Listing 12.15. *Otts*, 249 F. App'x at 889 (noting that it was the plaintiff's "burden to demonstrate that her disability met all of the specified medical criteria of a spinal disorder" and upholding the ALJ's decision that the plaintiff's impairments did not meet or equal Listing 1.04(A) because there was no evidence of motor loss accompanied by sensory or reflex loss or of nerve root compression); *see Pascal T. v. Berryhill*, 17-CV-1347, 2019 WL 316009, at *6 (N.D.N.Y. Jan. 24, 2019) (D'Agostino, J.) (rejecting the plaintiff's argument that he met or equaled the requirements of Listing 12.15 where "the ALJ cited to the records of multiple medical professionals who examined Plaintiff, including state agency medical consultants, whose opinions constitute expert opinion evidence which can be relied upon where supported by medical evidence in the record and not inconsistent with other substantial evidence.").

### 2.    Paragraph C

Further, I find no reversible error in the ALJ's assessment of the paragraph C criteria. The ALJ noted that although Plaintiff "continues to receive medical treatment and some psychological support, he has not required placement in a hospital, board or care facility, day treatment program[,] or other environment that provides a highly supportive living arrangement for persistent or uncontrolled psychiatric symptoms." (T. 21.) Moreover, the ALJ noted that Plaintiff "has been able to maintain most activities of daily living, . . . . travel to other states . . ., and engage in social activities such as attending a concert with his friends." (*Id.*) As a result, I

find that the ALJ properly evaluated the paragraph C criteria and supportably concluded that Plaintiff did not meet or equal the requirements of Listing 12.15. *See Ivey v. Comm'r of Soc. Sec.*, 19-CV-0657, 2020 WL 5046261, at *10 (W.D.N.Y. Aug. 27, 2020) (finding that "[b]ased on the ALJ's findings and the evidence of record, no reasonable fact finder could have found that Plaintiff had the marginal adjustment necessary to satisfy the paragraph (C) criteria" where the plaintiff, *inter alia*, successfully completed three college courses, traveled independently by bus, and visited the library regularly); *Waha v. Comm'r of Soc. Sec.*, 19-CV-0372, 2020 WL 3402326, at *6 (W.D.N.Y. June 19, 2020) (concluding that "[s]ubstantial evidence in the record supported the ALJ's determination [that] [p]laintiff's impairment does not meet the paragraph C . . . criteria" where the "[p]laintiff showed the ability to maintain a relationship, go out to eat, interrelate with his friends and family, remain stable with mental health care and use medication, take public transportation, drive and teach youth fencing and music."); *Jeffrey W. v. Berryhill*, 18-CV-0115, 2019 WL 2210593, at *8 (N.D.N.Y. May 22, 2019) (Kahn, J.) (finding that the plaintiff did not demonstrate "marginal adjustment" under paragraph C criteria where the plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking his dogs, cleaning his clothes, and vacuuming, and medical evidence indicated the plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought processes).

## VII.   RFC DETERMINATION

### A.     Legal Standards

### 1.     RFC

RFC is "what [the] individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis. . . ."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.

1999) (citing SSR 96-8p, 1996 WL 374184, at *2).  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-

CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville*,

198 F.3d at 52 (quoting SSR 96–8p, 1996 WL 374184, at *2)); *accord Tankisi v. Comm'r of Soc.*

*Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill*, 17-CV-00580, 2018 WL

4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349,

361 (N.D.N.Y. 2016) (Dancks, M.J.).

        In rendering an RFC determination, the ALJ must consider objective medical facts,

diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective

symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945;

*see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a

claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations

into account, but is not required to accept the claimant's subjective complaints without question;

he may exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8

(N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits,

factors to be considered by the ALJ include objective medical facts, clinical findings, the treating

physician's diagnoses, subjective evidence of disability, and pain related by the claimant.");

*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings

must specify the functions plaintiff is capable of performing, conclusory statements regarding

plaintiff's capacities are not sufficient.").  An ALJ must specify the functions a plaintiff is

capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[4] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

---

[4]    Plaintiff's application was filed on March 6, 2018. (T. 300-303, 380.)  Thus, the new regulations apply in this case.

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the

ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.     Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms. *Del Carmen Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations. The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623

(2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*; see *also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

**B.    Application**

**1.    The ALJ's evaluation of the medical opinion evidence was supported by substantial evidence.**

As an initial matter, the Court notes that Plaintiff argues that the ALJ failed to apply the treating physician rule and afford great deference to the opinions of Dr. Thompson and Dr.

Reddy.  (Dkt. No. 13 at 20-24.)  However, as Defendant contends, the treating source rule was eliminated for claims—like Plaintiff's—filed after March 27, 2017.  (Dkt. No. 14 at 23); *see*, *supra*, note 4.  As a result, I recommend that the Court reject Plaintiff's argument that the ALJ's RFC determination was unsupported by substantial evidence for failing to follow the treating source rule.

Further, I find that the ALJ's RFC determination is supported by substantial evidence. (T. 21-26.)

### a.    Opinion of Dr. Reddy

The ALJ supportably assigned the opinion of Dr. Reddy—who opined that Plaintiff had marked limitations in appropriate behavior and social interaction and extreme limitations in his ability to manage himself, deal with stress, sustain concentration, and maintain a routine—partial weight.  (T. 26.)

The ALJ properly noted that "the record supports significant reductions in [Plaintiff's] capacity for interacting with others and tolerating stress."  (T. 26.)  However, the ALJ also noted that, despite explicit instructions that it was very important to do so, Dr. Reddy failed to provide explanations in support of extreme limitations in adaptation, persistence, and ability to sustain a routine.  (*Id*.; T. 719.)  The ALJ noted that Plaintiff is generally able to maintain activities of daily living including attending appointments and keeping a routine involving daily exercise and bicycle riding.  (T. 26.)

The Court also notes that it is not apparent that the RCF failed to account for the limitations described by Dr. Reddy.  *See Sharon R. v. Kijakazi*, 20-CV-0902, 2021 WL 3884257, at *8 (N.D.N.Y. Aug. 31, 2021) (Baxter, M.J.) (finding that where Dr. Slowik assessed mild to moderate limitations in attention and concentration, "the ALJ's restricting plaintiff to unskilled

work with no production rate pace and no more than occasional changes in the work routine took

into consideration the plaintiff's 'work pace' and any limitations in her ability to follow a

routine."); *Lowry v. Comm'r of Soc. Sec.*, 15-CV-1553, 2017 WL 1290685, at *5 (N.D.N.Y. Mar.

16, 2017) (Carter, M.J.) (finding that an RFC limitation to simple, routine work accounted for the

physician's opinion that the plaintiff may have a moderate limitation in his ability to maintain a

schedule), *report-recommendation adopted by* 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017)

(Suddaby, C.J.); *Landers v. Colvin*, 14-CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29,

2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks'

accounts for Plaintiff's [moderate] limitations as to maintaining attention and concentration,

performing activities within a schedule, and maintaining regular attendance.").  Here, the RFC

limits Plaintiff to understanding and following simple instructions and directions, performing

simple tasks independently, maintaining attention and concentration for simple tasks, regularly

attending to a routine and maintaining a schedule, and handling simple, repetitive work-related

stress allowing for occasional decisions that are directly related to the performance of simple

tasks and do not require Plaintiff to supervise or manage the work of others.  (T. 21.)  Plaintiff

was to avoid complex interaction or joint effort to achieve work goals and limited to no contact

with the general public.  (*Id*.)  I find that these limits appear to account for the limitations set

forth by Dr. Reddy.

### b.     Opinion of Dr. Thompson

The ALJ supportably found Dr. Thompson's opinion—that Plaintiff's PTSD symptoms

limit his ability to maintain appropriate behavioral stability, emotional stability, and work

relationships, and cause episodic difficulties in his ability to focus and carry out work-related

activities in a reliable and consistent manner—persuasive.  (Dkt. No. 8 at 24-25.)  The ALJ

found that Dr. Thompson's opinion was consistent with the record and the disruptive effects of PTSD symptoms on Plaintiff's past work experience as a nurse. (Dkt. No. 8 at 24-25.) In addition, the ALJ noted Dr. Thompson's opinion that Plaintiff might minimize the disruptive effects of his PTSD symptoms by retraining for lower stress work. (*Id*.)

For the reasons stated in Defendant's memorandum of law (Dkt. No. 14), I find that the ALJ properly assigned persuasive weight to the opinion of Dr. Thompson.

### c.    Opinion of Dr. Juriga

The ALJ found that the opinion of Dr. Juriga— who opined that Plaintiff had moderate limitations concerning his ability to sustain a routine and interact appropriately with supervisors, coworkers, or the public—was persuasive. (Dkt. No. 8 at 25.) The ALJ noted that Dr. Juriga's opinion was based on a review of the record and supported by explanations. (*Id*.) The ALJ also noted Dr. Juriga's expertise and familiarity with the Agency's disability program policies and evidentiary requirements. (*Id*.) The ALJ considered that the express purpose of Dr. Juriga's review of the record was to render a medical opinion on disability using Agency criteria. (*Id*.) Further, the ALJ concluded that no records were submitted at the hearing which militated against Dr. Juriga's opinions. (*Id*.)

For the reasons stated in Defendant's memorandum of law (Dkt. No. 14), I find that the ALJ properly assigned persuasive weight to the opinion of Dr. Juriga.

### d.    Opinion of Dr. Grassl

The ALJ found that the opinion of Dr. Grassl— who opined that Plaintiff had marked limitations in his ability to regulate emotions, control behavior, maintain well-being, and interact with others—was partially persuasive because the record does not support a marked level limitation in any area of work-related mental functioning. (Dkt. No. 8 at 25-26.) The ALJ noted

that Dr. Grassl's opinions of marked restrictions were poorly supported by, *inter alia*, Plaintiff's ability to maintain activities of daily living. (*Id*. at 25.) In addition, the ALJ noted that although Dr. Grassl described Plaintiff struggles with authority, care providers had frequently described him to be present with a calm, cooperative demeanor. (*Id*. at 26.) The ALJ highlighted the strong relationship Plaintiff described with his children, his ability to remain in contact with family members via telephone, and the time that Plaintiff stated he spends time with friends, indicating a significant ability to maintain relationships. (*Id*.) The ALJ found the opinion of Dr. Grassl—who had an opportunity to examine but not treat Plaintiff or review his record—was less persuasive than that of Dr. Thompson who treated him and Dr. Juriga who reviewed his medical records. (*Id*.) Although Dr. Grassl did not review Plaintiff's medical records, "under the Regulations, a consultative examiner is not required to review a plaintiff's medical record." *Gamble v. Comm'r of Soc. Sec.*, 15-CV-0352, 2016 WL 4491710, at *6 (N.D.N.Y. July 25, 2016) (Mitchell, M.J.) (citing 20 C.F.R. § 404.1519n).

For the reasons stated in Defendant's memorandum of law (Dkt. No. 14), I find that the ALJ properly assigned partial weight to the opinion of Dr. Grassl.

Based on her review of the medical opinions, the ALJ supportably determined Plaintiff's RFC.

### 2.    The ALJ's evaluation of Plaintiff's testimony regarding subjective complaints was supported by substantial evidence.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. (T. 22.)

In discussing objective findings, the ALJ cited the treatment notes of Dr. Reddy which showed that Plaintiff appeared oriented, cooperative, casually dressed with the ability to maintain eye contact, a normal rate of speech, a normal rate of thought, no abnormal thought associations, and adequate judgment and insight.  (T. 23 [citing T.728, 832, 849, 903, 951-52, 1045, 1079].)  The ALJ also considered that Plaintiff's symptoms appeared largely managed with medication management and counseling and that Plaintiff reported that the medications helped control his anxiety.  (T.23-24 [citing T.837, 892, 1044, 1054-55].)  The ALJ also noted Plaintiff's daily activities including the ability to bathe, dress, groom, prepare meals, clean, wash laundry, shop, manage money, drive, travel out of state, and attend a concert.  (T. 23-24 [citing T. 700, 837, 990].)

Based on these findings, I find that the ALJ appropriately discounted Plaintiff's subjective complaints.

As a result, I recommend that the Court deny Plaintiff's motion for judgment on the pleadings asserting that the ALJ's RFC determination was not supported by substantial evidence.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is further respectfully

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Commissioner's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**, and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 20, 2022
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge